[Crim. No. 11198. In Bank. Dec. 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ABRAHAM TORRES GARCIA, Defendant and Appellant.

Alan F. Charles, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and David L. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant Abraham Torres Garcia was charged in count one of an information with possession of heroin for sale (Health & Saf. Code, § 11500.5) ; and in count two thereof with possession of marijuana (Health & Saf. Code, § 11530). Defendant pleaded not guilty to both counts. Trial by jury was waived, and the court found defendant guilty of the crimes charged. Defendant's motions for new trial and for reduction of count one to simple possession (Health & Saf. Code, § 11500) were denied. Defendant was sentenced to imprisonment in the state prison. He appeals from the judgment of conviction.[1]

On November 24, 1964, a search warrant was issued to Officer Harold Ginder of the Los Angeles Police Department, Narcotic Division, by a judge of the Municipal Court, Los Angeles Judicial District, authorizing the immediate search in the daytime or nighttime, for marijuana, heroin or other narcotic substances, together with any paraphernalia for narcotic packaging and use, of premises at 1305-7 East Olympic Boulevard, Los Angeles, a beer bar under the name of "Sancho's" and at 1657 West 12th Street, Apartment No. 1, Los Angeles, and of the persons of Frank Flores Reyna, Joe Flores Gomez, and Rose Reyna.

Officer Ginder's affidavit for the warrant set forth, *inter alia,* the following facts as constituting probable cause to believe that the above three persons were then in possession of the specified contraband on the described premises and on their persons: That affiant, assigned to the narcotic division for almost two years, had been investigating for the past two weeks the narcotic activities of the three persons later named in the warrant; that in the course of such investigation two reliable informants, whose identities were sought to be kept confidential, had told him that the three named persons were packaging and selling heroin and marijuana from both the

---

[1]Defendant also purports to appeal from the order denying his motion for new trial. That order being nonappealable (Pen. Code, § 1237, subd. 2; *People* v. *Lessard* (1962) 58 Cal.2d 447, 450 [25 Cal.Rptr. 78, 375 P.2d 46]), the attempted appeal therefrom must be dismissed.

beer bar, where Reyna worked as bartender and manager, and from the apartment, which was the residence of the three; and that the same informants ''have related that they have made purchases of narcotics from the said FRANK FLORES REYNA and JOE FLORES GOMEZ, both daytime and nighttime at their place of residence and at the beer bar known as 'Sancho's.' ''

The affidavit further alleged that according to the criminal records of the Los Angeles Police Department, Frank Reyna had been arrested for a variety of offenses, had been convicted and sentenced for selling narcotics, and was currently on parole; that Gomez was Reyna's bodyguard and carried a loaded revolver which he had threatened to use in order to defend Reyna's narcotics; that Reyna had a long criminal record and was currently on parole for a narcotics sale violation; that Gomez also had been convicted of selling heroin but it was unknown whether he was currently on parole; and that Rose Reyna was the common law wife of Frank Flores Reyna.

Neither the affidavit nor the warrant made any reference to defendant Garcia.

At the trial the prosecution produced evidence to the following effect: On November 25, 1964, about 10:30 a.m., Officer Ginder, together with other police officers, went to the apartment described in the warrant. The officers had with them the original and copies of the search warrant. Because of Ginder's information that Gomez carried a loaded revolver, the officers made an unannounced, forced entry into the apartment. They immediately saw three persons:[2] Joe Flores Gomez, who was sitting in a chair in the living room; and defendant (dressed only in undershorts) and one Mary Velasquez, who were lying on a mattress in the dining room. Frank and Rose Reyna were later located in the bathroom. The subsequent search of the apartment by the officers disclosed 24 balloons containing heroin, several marijuana cigarettes, and miscellaneous paraphernalia used in the packaging and sale of heroin. The heroin and marijuana were found under the mattress upon which defendant and Mary Velasquez were lying.

All occupants were placed under arrest for possession of

---

[2]The record indicates that a fourth person, one Antonio Velasquez, might also have been present in the room.

heroin and were advised of their constitutional rights, each occupant—including defendant—indicating that he or she understood the advice. When the officers were preparing to transfer all of the suspects to the jail, defendant asked one of the officers, ''Are you going to take everyone?'' Upon receiving an answer in the affirmative defendant said, ''Well, all the narcotics belongs to me.'' The officer then asked defendant whether he had made this statement in order to protect Reyna, and defendant replied, ''No.'' Defendant further stated that he had lived at the apartment for three or four days.

Defendant testified in his own behalf to the effect that he had come to the apartment about a half-hour before the officers arrived; that he was a heroin addict and had come to the apartment to get a ''fix''; that he had never been in the apartment before and was ''admitted'' because someone had ''put in a word'' for him;[3] that he had never lived at the apartment; that he was sitting in a chair fully clothed when the officers entered; that none of the narcotics found belonged to him; that he had had a ''fix'' shortly before the officers arrived; that he was at no time advised of his constitutional rights by the officers; and that he at no time admitted ownership of the narcotics.

More than a month prior to the commencement of the trial defendant filed a motion for pretrial discovery in order to compel disclosure by the People of the identity of the two informants relied upon by Officer Ginder in his affidavit for the search warrant. This motion was based on the separate grounds (1) that the informants were so-called ''participating informants,'' and (2) that the informants ''are material witnesses and have, or possibly have, information essential to the defendant's defense wherein they could testify that defendant is not guilty of the offense with which he is charged, . . .'' The declaration of defendant's attorney in support of the motion made particular reference to that portion of the affidavit in support of the search warrant which recited that the informants had made purchases of narcotics

---

[3]Defendant testified as follows on cross-examination:

''A. . . . I mean I had heard, you know, before about these people, but actually I never went up there to score [obtain narcotics], you know.

''Q. [By the prosecutor] You said you met Frank [Reyna]. Where did you meet him?

''A. I met him there at the house.

''Q. At the apartment?

''A. Yes, sir. This guy, you know, talked to him, and finally he put in a word for me so I could go up there myself, you know.''

from Reyna and Gomez both at their apartment and at the beer bar. It further alleged the declarant's belief that the informants were "participating informants" and that "such parties are material witnesses in that they could testify, or could possibly testify, to the fact that the narcotics with which the defendant is charged to possess and charged with possession for sale, as alleged in the information, in fact belong to FRANK REYNA, JOE GOMEZ, or some other party." At the hearing on the motion defendant called Officer Ginder, who had executed the affidavit in support of the warrant, and asked him to reveal the identities of the informants. The officer refused to do so on the basis of former section 1881 subdivision 5 of the Code of Civil Procedure,[4] stating that he was exercising the indicated privilege because "Both informants [sic] lives would be in danger if I divulged them, and they are not participating informants." Defendant then moved the court to order the officer to disclose the names, identity and addresses of the informants. Upon denial of the motion defendant further moved to dismiss the information. This motion also was denied.

At trial, upon cross-examination of the same police officer, disclosure of the informants' identities was again sought by defendant and refused by the officer. After extended argument by counsel, the court concluded that "there is nothing to disclose that either [sic] the testimony of those two witnesses, unnamed informers, would be material, nothing to show that their testimony would be relevant and helpful to the defense of the case or essential to a fair determination of the case."

Thus we face the principal issue in the case: Whether the trial court erred in refusing to compel disclosure of the two informants.

In *People* v. *McShann* (1958) 50 Cal.2d 802, at pages 806-808 [330 P.2d 33], we discussed the reasons of public policy underlying the common law privilege of nondisclosure encompassed within former section 1881 subdivision 5 of the Code of Civil Procedure, and we observed that the privilege was applicable, in the terms of the statute, only "when the public interest would suffer by the disclosure." We explained that

---

[4]The subdivision in question provided that "A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure." This provision was superseded on January 1, 1967, by sections 1040-1042 of the Evidence Code, which are discussed *infra*. However, on this appeal we apply "the law applicable at the time of the commencement of the trial." (Evid. Code, § 12, subd. (b)(2).)

this standard prevented application of the privilege in cases where disclosure " 'is relevant and helpful to the defense of the accused or essential to a fair determination of a cause. . . .' " (50 Cal.2d at p. 807; see *Roviaro* v. *United States* (1957) 353 U.S. 53, 60-61 [1 L.Ed.2d 639, 77 S.Ct. 623]), and that for these purposes a "mere informer" was to be distinguished from one who was or could be a material witness for the defense. "A mere informer has a limited role. 'When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged.' (*People* v. *Lawrence, supra,* 149 Cal.App.2d at 450 [308 P.2d 821].) His identity is ordinarily not necessary to the defendant's case, and the privilege against disclosure properly applies. *When it appears from the evidence, however, that the informer is also a material witness on the issue of guilt, his identity is relevant and may be helpful to the defendant. Nondisclosure would deprive him of a fair trial. Thus, when it appears from the evidence that the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal.*" (Italics added.) (50 Cal.2d at p. 808.)

In *People* v. *Williams* (1958) 51 Cal.2d 355, at page 357-358 [333 P.2d 19], we again undertook to describe the limits of the privilege: "It has long been recognized that, although the government is generally privileged to withhold the identity of informers, the privilege must give way when it comes into conflict with the fundamental principle that a person accused of crime is entitled to a full and fair opportunity to defend himself. (*Regina* v. *Richardson* (Eng.), 3 F. & F. 693; see *Marks* v. *Beyfus* (Eng.), 25 Q.B.D. 494, 498.) While the language employed in describing the restriction on the privilege is not always the same, it does not vary in any substantial respect. . . .

"*What is important is not the precise phraseology used but the firmly established principle that the privilege may not be invoked in a criminal case in which the identity of the informer is material to the defense and nondisclosure would result in denying the defendant a fair trial.* [Citations.]" (Italics added.)

The indicated principles have been applied in many cases decided subsequent to *McShann* and *Williams*. We cite in the

margin some of the cases where nondisclosure was held proper because a "mere informer" was involved;[5] we also cite some of the cases wherein nondisclosure has been held improper because the informant involved was deemed a material witness on the issue of guilt.[6] Most cases in the latter category involve informants who were actual participants in the criminal act.[7] However, as we pointed out in *McShann*, "Disclosure is not limited to the informer who participates in the crime alleged. The information elicited from an informer may be 'relevant and helpful to the defense of the accused or essential to a fair determination of a cause' even though the informer was not a participant. For example, the testimony of an eyewitness-nonparticipant informer that would vindicate the innocence of the accused or lessen the risk of false testimony would obviously be relevant and helpful to the defense of the accused and essential to a fair determination of the cause." (50 Cal.2d at p. 808.)

Further, as the facts of the *McShann* case clearly show, a nonparticipant informant can be a material witness whose identity must be disclosed upon proper demand *even when such informant was not an eyewitness to the alleged criminal act*. There the defendant was charged with two narcotics violations. As to the first of these it was shown that a confidential informant, cooperating with police, had spoken on the telephone with a person at a number listed as that of defendant, had arranged with that person to purchase narcotics from him

[5]*People* v. *Sanders* (1967) 250 Cal.App.2d 123 [58 Cal.Rptr. 259]; *People* v. *Rupar* (1966) 244 Cal.App.2d 292, 299-300 [53 Cal.Rptr. 70]; *People* v. *Layne* (1965) 235 Cal.App.2d 188, 192 [45 Cal.Rptr. 110]; *People* v. *Dickenson* (1962) 210 Cal.App.2d 127, 135-136 [26 Cal.Rptr. 601]; *People* v. *Rodriguez* (1962) 204 Cal.App.2d 427, 431-432 [22 Cal. Rptr. 324]; *People* v. *Schmidt* (1960) 178 Cal.App.2d 865, 869-870 [3 Cal.Rptr. 438]; *People* v. *Gardner* (1960) 177 Cal.App.2d 43, 46 [1 Cal.Rptr. 830]; *People* v. *Williams* (1959) 175 Cal.App.2d 774, 776-777 [1 Cal.Rptr. 44]; *People* v. *Amado* (1959) 167 Cal.App.2d 345, 348 [334 P.2d 254]; *People* v. *Faulkner* (1958) 166 Cal.App.2d 446, 448 [333 P.2d 251].

[6]*People* v. *Perez* (1965) 62 Cal.2d 769, 771-774 [44 Cal.Rptr. 326, 401 P.2d 934]; *People* v. *Hammond* (1960) 54 Cal.2d 846, 851 [9 Cal. Rptr. 233, 357 P.2d 289]; *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 751-754 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Durazo* (1959) 52 Cal.2d 354, 356 [340 P.2d 594, 76 A.L.R.2d 257]; *People* v. *Montano* (1966) 244 Cal.App.2d 555 [53 Cal.Rptr. 145]; *People* v. *Diaz* (1959) 174 Cal. App.2d 799 [345 P.2d 370].

[7]"[W]hen an informant participates in the criminal act he is no longer simply an informer. He is a material witness to the criminal act, in fact, he is similar to a feigned accomplice." (*People* v. *Lawrence* (1957) 149 Cal.App.2d 435, 450 [308 P.2d 821].)

at a prearranged location, and had purchased narcotics pursuant to this arrangement from a person driving a car registered to defendant. As to the second count it was shown by the prosecution that on the next day the informant had made a similar appointment by telephone with the same person, but that defendant was arrested, with narcotics in his possession en route to the meeting and prior to its consummation. We held that the refusal to disclose the identity of the informant was clearly erroneous as to *count one,* for the informant had participated in the criminal act charged. We further held that disclosure was required as to *count two* because in the circumstances the informant was a material witness *even though he neither participated in nor was an eyewitness to the offense charged.* In view of the fact that defendant denied that he had received the alleged telephone call and that he was in possession of narcotics at the time of his arrest, and of the further fact that the telephone call was relied upon by the prosecution to show that defendant was en route to make a sale to the informant at the time of his arrest and therefore had knowing possession at that time, we concluded that the informant, as the originator of the telephone call, was a material witness in the premises. ''Had there been disclosure, the informer might have testified that no such telephone call was made, that it was not defendant who received the call, that someone else was called, or that there was an entrapment.'' (50 Cal.2d at p. 810.)

In the instant case, as in the second count in *McShann,* we are concerned with informants who neither were participants in the alleged crime nor were eyewitnesses thereto. We have concluded that the relevant circumstances require that such informants be deemed material witnesses for the defense of defendant Garcia,[8] and that the court's refusal to order disclosure of their identities upon proper request for

[8]It is notable that the prosecution in the instant case did not use the information provided by the informants as substantive evidence to prove the guilt of defendant Garcia. Compare *People* v. *McShann, supra,* 50 Cal.2d 802, 809-810, with *People* v. *Williams, supra,* 51 Cal.2d 355, and *People* v. *Durazo* (1959) 52 Cal.2d 354 [340 P.2d 594, 76 A.L.R.2d 257].) Although we do not discount the importance of the factor of such use, we consider that the instant case clearly demonstrates that an informant may be a material witness for the defense whose disclosure is necessary to a fair trial even though the prosecution seeks to make no substantive use of information provided by such informant to prove the guilt of the accused. (See and compare Comment: *Disclosure of Informers Who Might Establish the Accused's Innocence* (1959) 12 Stan.L.Rev. 256, 261-262.)

such disclosure deprived defendant Garcia of a fair trial and requires that the judgment against him be reversed.

It is highly significant that the warrant and affidavit in support thereof related only to the Reynas and Gomez, and that the affidavit alleged *inter alia* that both informants had made purchases of narcotics from such persons at their apartment, the scene of the search. These factors are consistent with the claim of defendant at trial that he was a visitor at the apartment who was there for the first time on the occasion of the search. More importantly, the indicated factors give rise to the distinct and substantial possibility that the informants could give direct evidence supportive of defendant's position. It is clearly quite possible, for instance, that such informants might have been possessed of information as to the quantity of narcotics kept by Reyna and Gomez at the apartment, as well as information relating to the place where such narcotics were cached.[9] It is further possible that their acquaintance with the occupants of the apartment might have been of such a nature that they could testify as to who lived there during the period of time preceding the search. Certainly if testimony were produced to the effect that Gomez and the Reynas were the only residents of the apartment during the indicated period of time, and that such residents kept heroin stored in balloons under the mattress where the narcotics were in fact found, such evidence would be highly relevant and material to defendant's contention that he was merely a visitor at the apartment who had come to get a "fix."

We emphasize that a defendant seeking to discover the identity of an informant bears the burden of demonstrating that, "in view of the evidence,[10] the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial." (*People* v. *Williams, supra,* 51 Cal.2d 355, 359; see *People* v. *McShann, supra,* 50 Cal.2d 802, 808.) That burden is dis-

---

[9] At trial Officer Ginder, who had executed the affidavit in support of the search warrant, testified that "the way I understood them" the informants had never actually been inside the apartment but had received their narcotics "outside the apartment." He admitted, however, that he formed this impression without specifically questioning the informants on the point.

[10] It is necessary that a broad definition of "evidence" be adopted in the premises. (See Comment, *supra,* 12 Stan.L.Rev. 256, 260, fn. 20.) In the instant case, as in *People* v. *Perez* (1965) 62 Cal.2d 769 [44 Cal.Rptr. 326, 401 P.2d 934], discussed *infra,* the "evidence" in the case includes the affidavit in support of the warrant.

charged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. "No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. *It is the deprival of the defendants of the opportunity of producing evidence which* MIGHT [original emphasis] *result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors.*" (Italics added.) (*People* v. *Castiel* (1957) 153 Cal.App.2d 653, 659 [315 P.2d 79].)

In *People* v. *Perez* (1965) 62 Cal.2d 769 [44 Cal.Rptr. 326, 401 P.2d 934], police officers went to defendants' hotel room in order to execute a search warrrant supported by an affidavit reciting information received from a reliable informant. Marijuana was found. Defendants contended that the marijuana had been left in their room without their knowledge by a man they had met in a tavern, and they contended that this man might well be the informant whose information was relied upon to support the warrant. Disclosure of the informant's identity was denied on the basis of the privilege, and we held on appeal that such denial was prejudicial error. In response to the contention that defendants were required to produce some evidence beyond mere assertion that the man in the room was the informant, we said the following: "It is contended, however, that there is no evidence that the man who left the marijuana in defendants' room was also the informer. There is no merit in this contention. The court improperly refused to consider the affidavit supporting the search warrant, which would have shown that the informer observed marijuana in defendants' room on October 13th. Perez remained in the room most of that day, and the only person other than defendants known to have been in the room before the officers entered was the stranger alleged to have 'planted' the marijuana. Defendants, therefore, showed cause to believe that the stranger was the undisclosed informer. They seek the identity of the informer for the specific purpose of determining if he is the stranger who might be crucial to their defense. They need not prove conclusively before disclosure the very fact they seek to obtain through disclosure. Such certainty of proof is not required as a foundation for

obtaining the identity of an informer who might be helpful to the defense of the accused. (*People* v. *Castiel*, 153 Cal.App.2d 653, 659 [315 P.2d 79] ; see *People* v. *Riser*, 47 Cal.2d 566, 587-588 [305 P.2d 1].) The refusal to require such disclosure was prejudicial error.'' (62 Cal.2d at pp. 773-774.)

We conclude that defendant has made a sufficient showing that the informants referred to in the affidavit in support of the search warrant were material witnesses on the issue of guilt in that their testimony might have resulted in his exoneration, and that nondisclosure of their identities deprived him of a fair trial. Therefore, the claim of privilege pursuant to former section 1881 subdivision 5 of the Code of Civil Procedure was erroneously sustained to defendant's prejudice, and the judgment must be reversed.

As we have previously stated (see fn. 4, *ante*), we are required to apply on appeal ''the law applicable at the time of the commencement of the trial'' (Evid. Code, § 12, subd. (b)(2)), and we have therefore examined the claim of privilege raised at the trial herein in light of former section 1881 subdivision 5 of the Code of Civil Procedure, and cases interpreting that statute. Since that examination has resulted in a determination that the judgment must be reversed, and since at any subsequent trial relevant sections of the Evidence Code would be applicable (Evid. Code, § 12, subd. (b)(1)), we proceed to consider briefly whether efforts of defendant to discover the identities of the informants here in question would prevail against a proper claim of privilege under the Evidence Code.

Section 1041 of the Evidence Code[11] provides in substance as here relevant that a public entity may refuse to disclose the identity of an informant if privilege is properly claimed and ''Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice; . . .'' When this language is contrasted against that of former section 1881 sub-

---

[11]Former section 1881 subdivision 5 of the Code of Civil Procedure was on its face applicable to the disclosure of official information communicated by informants, as well as to the disclosure of the identity of such informants. (See *People* v. *McShann*, *supra*, 50 Cal.2d 802, 807.) The Evidence Code sets forth in separate sections the privilege against disclosure of official information communicated by informants (§ 1040) and the privilege against disclosure of the identities of such informants (§ 1041). Further, it sets forth in a separate section special rules regarding the consequences of invocation of such privileges in a criminal proceeding (§ 1042).

division 5 of the Code of Civil Procedure (". . . when the public interest would suffer by the disclosure"), it is apparent that the Legislature has attempted in the new statute to delineate by express language the elements to be considered in a determination of whether or not, in a particular case, the public interest requires nondisclosure.

■ It is our view that the "weighing" language of section 1041 (as well as the similar and parallel language of § 1040—see fn. 11, *ante*), while indicating the reasoning process to be undertaken when considering the claims of privilege in question, does not represent a fundamental legislative disagreement with the decisions of this court holding that under former section 1881 subdivision 5 of the Code of Civil Procedure, the official identity-of-informant privilege must yield when it is shown that the informant whose identity is sought is a material witness for the defense and nondisclosure *would deprive the defendant of a fair trial.* In such cases, it is clear that the "balance" is struck in favor of the defendant, and disclosure must be ordered upon pain of dismissal. Any other conclusion would be at variance with due process provisions of the state and federal Constitutions.

This conclusion is supported by an examination of section 1042 subdivision (c) of the Evidence Code. That subdivision provides generally that, in any proceeding for violation of the narcotics law, information communicated to a police officer by a confidential informant *"who is not a material witness to the guilt or innocence of the accused of the offense charged"* is admissible on the issue of reasonable cause for arrest or search without disclosure of the identity of the informant if the court "is satisfied . . . that such information was received from a reliable informant and in his discretion does not require such disclosure."[12] (Italics added.) ■ Although we recognize that this subdivision is not directly applicable to the issue presently before us (because it is concerned only with the admission of evidence upon the issue of reasonable cause to arrest and search),[13] we consider persuasive its obvi-

---

[12]In *Martin* v. *Superior Court* (1967) 66 Cal.2d 257 [57 Cal.Rptr. 351, 424 P.2d 935], we upheld the constitutional validity of section 1881.1 of the Code of Civil Procedure, which essentially rendered section 1042 subdivision (c) of the Evidence Code effective in the interim between the enactment of the Evidence Code and its effective date of January 1, 1967. (See *McCray* v. *Illinois* (1967) 386 U.S. 300 [18 L.Ed.2d 62, 87 S.Ct. 1056]; cf. *Priestley* v. *Superior Court* (1958) 50 Cal.2d 812 [330 P.2d 39].)

[13]It appears that prior to trial, but subsequent to arraignment before the superior court, defendant sought to controvert the grounds upon which

ous implication that the court is to exercise its discretion as to the admission of information received from an informant without requiring disclosure of the identity of such informant *only* after it has first determined that the informant "is not a material witness to the guilt or innocence of the accused. . . ." It thus appears that the Legislature has recognized in a related context that the governmental interest in nondisclosure must yield when to sustain the privilege would be tantamount to a violation of constitutional fair trial guarantees.[14]

The purported appeal from the order denying defendant's motion for new trial is dismissed, said order being nonappealable. The judgment is reversed.

Traynor, C. J., Peters, J., and Tobriner, J., concurred.

MOSK, J.—I dissent.

The majority compile in the margin of their opinion those cases involving a "mere informer," in which nondisclosure of identity was upheld (fn. 5, *ante,* p. 837), and cases in which disclosure was required (fn. 6, *ante,* p. 837).

In the latter category of cases, the informer in each instance was a direct participant in the narcotic transaction and thus became "no longer simply an informer. He is a material witness to the criminal act, in fact, he is similar to a feigned accomplice." (*People* v. *Lawrence* (1957) 149 Cal. App.2d 435, 450 [308 P.2d 821].) In *People* v. *Perez* (1965) 62 Cal.2d 769, 772, 773 [44 Cal.Rptr. 326, 401 P.2d 934], the informer "observed marijuana in defendants' room" and "the informer was a participant in the crime if it was he who left the marijuana in defendants' room." In *People* v. *Hammond* (1960) 54 Cal.2d 846, 849 [9 Cal.Rptr. 233, 357 P.2d 289], "two sales of heroin [were] alleged to have been arranged by and made to an informer." In *People* v. *Kiihoa* (1960) 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], the

the search warrant issued—and that his motion was denied because his failure to seek such relief before the issuing magistrate (see Pen. Code, §§ 1539-1540) precluded such a motion before the superior court. Our recent decision in *People* v. *Butler* (1966) 64 Cal.2d 842 [52 Cal.Rptr. 4, 415 P.2d 819], clearly establishes that denial of defendant's motion on the indicated ground was erroneous.

[14]See also the Comment of the Assembly Committee on Judiciary upon section 1042: "In some cases, the privileged information will be material to the issue of the defendant's guilt or innocence; in such cases, the law requires that the court dismiss the case if the public entity does not reveal the information. *People* v. *McShann,* 50 Cal.2d 802, 330 P.2d 33 (1958)."

transaction for the sale of narcotics was consummated by the deputy sheriff and the informer jointly. In *People* v. *Durazo* (1959) 52 Cal.2d 354, 356 [340 P.2d 594, 76 A.L.R.2d 257], the issue was "the unidentified informer's participation in the first sale." In *People* v. *Montano* (1966) 244 Cal.App.2d 555, 563 [53 Cal.Rptr. 145], there was "no question that both informants . . . claimed to know a great deal about the crime of which defendant was convicted." In *People* v. *Diaz* (1959) 174 Cal.App.2d 799, 803 [345 P.2d 370], the court found the "informer was an eyewitness, hence a material witness, to the transaction. . . ."

The factual situation in the foregoing cases was comparably repeated in the two cases upon which the majority rely most heavily. In *People* v. *McShann* (1958) 50 Cal.2d 802, 804 [330 P.2d 33], the informer "went to the Oakland Police Department where he made an appointment by telephone for the purchase of narcotics from defendant." And in *People* v. *Williams* (1958) 51 Cal.2d 355, 357 [333 P.2d 19], the informer actively assisted the police officer in consummating the transaction for the purchase of narcotics from the defendant.

The instant matter cannot be reconciled with the series of cases requiring disclosure. The two unnamed informers here (1) did not participate in or witness the transaction involving this defendant; (2) were not present when the evidence was seized and the arrest was made; (3) made no accusation against this defendant regarding purchase or possession of narcotics; (4) made charges only against three other individuals involving a bar and an apartment in no way under the control of this defendant. Indeed, there is no indication in the record that the informers knew or had ever heard of this defendant.

Under these circumstances the informers not only were nonparticipants in any criminal activity involving this defendant, they did not even reach a "mere informer" status as to this case. They were insulated by a full second step from the proceedings and events with which the court was here concerned.

Not having been present at the time of the officers' invasion of the apartment and seizure of contraband, the informers, had they been produced at the trial, would have been unable to testify as to which person then possessed the narcotics. The fact that the informers might have been able to discuss prior acquisition of narcotics from others arrested with this defend-

ant would have been of no probative value whatever on the issue of possession at another time, by another person, of other narcotics.

I would hold the nondisclosure of the informers here to be entirely proper (*People* v. *McShann, supra;* Evid. Code, § 1042, subd. (c)), and would affirm the judgment.

McComb, J., and Burke, J., concurred.