[Crim. No. 6125.   First Dist., Div. Four.   Mar. 20, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER REASE WELCH et al., Defendants and Appellants.

Dell Ebersold, in pro. per., and Robert A. Doyle, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Jerome C. Utz and John F. Henning, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

RATTIGAN, J.—The principal question on this appeal requires an examination, in the light of recent decisions by our Supreme Court, of "reasonable and good faith belief" on the part of police officers which will justify their entering premises without demanding admittance and explaining their purpose as required by Penal Code section 844.

Appellants Welch and Ebersold were jointly charged by information, in two counts, with possession of narcotics in violation of Health and Safety Code, section 11500. Count I charged possession of heroin, count II possession of demerol. After a nonjury trial, both appellants were found guilty on each count. Their appeal is from the judgment of conviction.

In May 1965 Welch was on parole. Matthew Cohn, his parole agent, became aware that Welch had violated several conditions of his parole. The violations included his failure to report for a scheduled Nalline test. On May 10, Cohn called Officer Lestelle, a narcotics officer in the Los Angeles Police Department, and requested Lestelle's assistance in taking Welch into custody for parole violation. He told Lestelle, among other things, that Welch had failed to report for the Nalline test. On May 28, Cohn learned that the Adult Author-

ity had formally suspended Welch's parole and ordered his return to prison. Knowing that an all-points bulletin had therefore been issued for Welch's arrest as a parole violator, Cohn called Officer Lestelle again and advised him of the further developments.

On the morning of June 9, Officer Lestelle received an anonymous telephone call. The caller told him that Welch was living with Ebersold at 10938¾ Magnolia Boulevard, and that Welch was "on the run." When Officer Lestelle testified to this telephone conversation at the trial, appellants moved to strike evidence of its contents upon the ground that Lestelle had not disclosed the identity of the anonymous informant. The trial court denied the motion.

Shortly after receiving the anonymous telephone call, Lestelle went to the Magnolia Boulevard address. Sergeant Mullens and Officer Sheldon were with him. The address was an apartment building. The officers spoke to a lady in the manager's apartment on the first floor. When Officer Lestelle described Welch and Ebersold to her, she said that both men were living in the upstairs apartment. She said the "big one" (or the "tall blond one"), whom the officers took to be Welch, was in the apartment at the time.

The lady also told the officers that "to get in [to the apartment] you would have to turn the knob and lift at the same time, that there was something wrong with the mechanism of the door but we could make entry in that manner." The officers had "examined the premises to determine possible places of escape or exit." The upstairs apartment was the only apartment on the second floor. Its entry door, which was also upstairs, was its only door: there was no other way out unless an occupant "jumped out the window" from the second floor. Having thus informed themselves, the three officers went upstairs together.

The officers did not have in their possession a warrant for Welch's arrest, although—as previously stated—they had been officially informed that he was subject to arrest as a parole violator. They had no warrant for Ebersold's arrest, nor for a search of either suspect, nor for a search of the apartment. However, Officer Lestelle and Sergeant Mullens both knew Welch and Ebersold, and both testified at the trial concerning their impressions as they approached the apartment on June 9.

Officer Lestelle testified that "I have known Mr. Welch to be the user of narcotics. I also have known Mr. Ebersold as a

user of narcotics. I have arrested Mr. Ebersold for a robbery in which weapons were used. I have recovered from Ebersold's residence at the time of the arrest for robbery one or two pistols which were used in the commission of a 211. And it was my belief at that time that if he was in there, he could possibly be armed and that both of them would be in possession of narcotics and by knocking on the door would give them time to get rid of the narcotics or if they did have a weapon, arm themselves.''

Sergeant Mullens testified that ''[M]y reason for entering without knocking or announcing myself and announcing our intentions was for several reasons . . . I knew the background of Ebersold. I knew that he had been charged with a robbery with a gun. He was a participant in that crime, and I considered him dangerous. I had prior experience with Mr. Welch, that he fled or attempted to flee at one time when I went to arrest him several years ago; and . . . I knew that from past experience that both defendants were users of narcotics, . . and that by announcing ourselves I feared either one or both inside the apartment would have destroyed evidence if it had been present, and for those reasons I forced an entry without announcing myself or my intentions.''

Both officers elaborated somewhat on their prior experience with Welch and Ebersold. The former's attempt ''to flee'' from a previous arrest, as described by Sergeant Mullens, had consisted of his hiding briefly in a bedroom when Mullens arrived at his home to make the arrest. The robbery and gun incidents involving Ebersold had occurred about 10 years before, when Lestelle and Mullens arrested him. The officers were reliably informed at the time, and after the arrest, that Ebersold had participated in an armed robbery in which the victim was pistol-whipped. They had arrested him at his residence, where a search turned up a gun hidden in an outbuilding.

Upon reaching the apartment door on June 9, none of the officers knocked or announced himself in any way. Sergeant Mullens immediately turned the knob as directed by the woman downstairs, but the door would not open. Mullens thereupon kicked out its bottom wooden panel, and all three officers crawled into the apartment at floor level.

Welch was in the apartment. Sergeant Mullens promptly arrested him for parole violation. The three officers searched the premises and found in the bathroom, among other things,

a vial containing heroin and some pills which turned out to be demerol.

While the search was still under way a few minutes later, Ebersold came up the stairs and entered the apartment. During a brief conversation with him at the door, Officer Lestelle noticed some apparently fresh needle marks inside the elbow of Ebersold's left arm, and that his pupils were constricted. The officer formed the opinion that Ebersold was under the influence of a narcotic, and arrested him upon that charge. Sergeant Mullens searched Ebersold's person and found a vial in his trousers pocket. The vial's contents were later shown to be heroin.

At the trial, the testimony of the apartment manager established that on June 9 both Welch and Ebersold were living in the upstairs apartment as regular tenants. Over appellants' objection, the trial court admitted in evidence the heroin and demerol found in the apartment search and the heroin taken from Ebersold's person.

Appellants challenge the admissibility of the narcotics evidence upon the grounds that, in entering the apartment, (1) the officers relied in part upon information received from an undisclosed informant, and (2) that they broke in without complying with Penal Code section 844.

▉ Appellants' first contention is based upon *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812 [330 P.2d 39]. The *Priestly* rule requires disclosure of an informer's identity only "when the prosecution seeks to show reasonable cause for a search by testimony as to communications from an informer" (*id.*, at p. 819), and when the informer is a material witness to the guilt or innocence of the accused. (Code Civ. Proc., § 1881, subd. 5; *id.*, § 1881.1; Evid. Code, § 1042, subd. (c); *People* v. *Garcia* (1967) 67 Cal.2d 830, 836, 842, fn. 12 [64 Cal.Rptr. 110, 434 P.2d 366]).)[1] In the present case the prosecution did not prove the anonymous telephone call to show reasonable cause for arrest or search, but only to explain the officers' knowledge of Welch's where-

---

[1] The relevant law of evidence applicable to the present case was in Code of Civil Procedure sections 1881 (subd. 5) and 1881.1, because the trial commenced in April 1966. (Evid. Code, § 12, subds. (b), (b)(2).) The Supreme Court's decision in *Martin* v. *Superior Court* (1967), upholding the constitutionality of Code of Civil Procedure, section 1881.1, "essentially" rendered Evidence Code, section 1042, subdivision (c), "effective in the interim between the [1965] enactment of the Evidence Code and its effective date of January 1, 1967." (*People* v. *Garcia, supra,* 67 Cal.2d 830 at p. 842 [fn. 12].)

226

abouts on June 9: and there is no evidence that the anonymous caller was a material witness in any respect. Consequently, *Priestly* does not apply.

■ A more important question is presented by the undisputed fact that the three officers failed to comply with the requirements of Penal Code section 844[2] before breaking into the apartment. Speaking to this point, the People rely on the fact that Welch was a parolee. But even the fact that he was a parole violator deemed an "escape and fugitive from justice" (Pen. Code, § 3064) did not excuse noncompliance with section 844. This is because the Legislature has expressly provided that an order to retake a parolee must be executed "in like manner as ordinary criminal process" (Pen. Code, § 3061), and even an escape from custody "does not alone justify entrance into a house to make an arrest without explanation of purpose and demand for admittance. [Citations.]" (*People* v. *Rosales* (1968) 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489].)

In the *Rosales* case, the Supreme Court also held (68 Cal. 2d 299 at p. 305) that "Noncompliance with section 844 may . . . be excused when an officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. Such a belief, however, must be based on the facts of the particular case. It cannot be justified by a general assumption that certain classes of persons subject to arrest are more likely than others to resist arrest, attempt to escape, or destroy evidence. (*People* v. *Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706] and cases cited.)"

■ It does not appear that the officers were acting in the reasonable belief that compliance with section 844 would trigger an escape attempt by Welch. Sergeant Mullens had had an experience with an attempted flight by Welch once before, but the episode was apparently insignificant; and both officers indicated in their testimony that they were not seriously concerned with the prospect of an escape attempt on June 9. ■ And, assuming that they had reasonable cause to believe that there were narcotics in the apartment (see *People*

[2]As pertinent, Penal Code, section 844 provides that:
"844. To make an arrest . . . a peace officer, may break open the door . . . of the house in which the person to be arrested is, or in which . . . [the officer has] . . . reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

v. *Carrillo* (1966) 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377] [parolee's failure to report for Nalline test as reasonable cause to believe that he possessed narcotics]), the "general propensity of narcotics violators to destroy evidence when confronted by police officers" will not suffice to excuse noncompliance with Penal Code section 844. (*People* v. *Rosales, supra,* 68 Cal.2d 299 at p. 305; *People* v. *Gastelo, supra,* 67 Cal.2d 586 at p. 589.)

However, Officer Lestelle's and Sergeant Mullens' experience with Ebersold had caused them to associate him with both possession and use of deadly weapons. Although they did not know if he was in the apartment when they approached it, they had not been informed to the contrary: and they knew he lived there. He was not their objective, but they could not safely assume that he would recognize the fact if they announced themselves. Their impressions of him were not new, but they had not been dimmed by time.

The officers' testimony on the subject was not inherently incredible, and its weight was for the trial court to determine. That court apparently believed that the officers were acting reasonably under the circumstances, and the conclusion is supported by the evidence. We hold, therefore, that the officers' failure to comply with Penal Code section 844 was excused by their reasonable and good faith belief that compliance would imperil their safety. (*People* v. *Rosales, supra,* 68 Cal.2d 299 at p. 305; *People* v. *Gastelo, supra,* 67 Cal.2d 586 at p. 588.)

It is not disputed that the officers had reasonable cause to arrest Welch in the apartment. (Pen. Code, § 3064.) Accordingly, the entry itself was lawful (*People* v. *Shelton* (1964) 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665]), as was the arrest of Welch. The ensuing search of the apartment was reasonable, and the evidence found in the bathroom was admissible. (*United States* v. *Rabinowitz* (1950) 339 U.S. 56, 60-61 [94 L.Ed. 653, 657-658, 70 S.Ct. 430]; *People* v. *Winston* (1956) 46 Cal.2d 151, 162 [293 P.2d 40].)

Appellant Ebersold also challenges the admission in evidence of the heroin found in the search of his person. His argument cannot be sustained because it rests entirely upon the asserted illegality of the officers' entry of the apartment: but it may be noted further that the heroin in question was turned up in a search which did not derive from the entry. Ebersold was arrested on a valid charge (Health & Saf. Code,

§ 11721) and for reasonable cause. (*People* v. *Davis* (1966) 240 Cal.App.2d 496, 500 [49 Cal.Rptr. 663]; *People* v. *Roy* (1963) 222 Cal.App.2d 156, 158 [34 Cal.Rptr. 846].) The search of his person was reasonable as an incident of his arrest (*People* v. *Ross* (1967) 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606]), and it was not ''come at by exploitation'' of any illegal conduct on the part of the police, (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 766 [44 Cal.Rptr. 313, 401 P.2d 921].)

The judgment is affirmed.

Devine, P. J., and Christian, J., concurred.

A petition for a rehearing was denied April 19, 1968.