[Crim. No. 8391. First Dist., Div. Two. Nov. 24, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
DON McCOY et al., Defendants and Respondents.

COUNSEL

Thomas C. Lynch, Attorney General, Derald E. Granberg, John T. Murphy and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Appellant.

Pano Stephens, Theodore C. Lachelt and Robert K. Birkie for Defendants and Respondents.

OPINION

SHOEMAKER, P. J.—This is an appeal by the People from an order dismissing a criminal prosecution against 11 defendants.

The record reveals that on March 20, 1969, a grand jury indictment was filed against defendants Don McCoy, Robert McKendrick, Sandra Barton, Cecile Korte, William Candelario, Walter Doyle, Oleg Minakov, Robert Ellison, John D'Amore, Kris Stenz and Dennis Kalfas. The first count of the indictment charged all 11 defendants with possession of marijuana, in violation of Health and Safety Code, section 11530. The second count charged Doyle, Minakov and D'Amore with possession of a device for smoking a narcotic, in violation of Health and Safety Code, section 11555. The third and fourth counts charged McKendrick only with possession of cocaine and peyote, in violation of Health and Safety Code, section 11500; and possession of dangerous drugs, in violation of Health and Safety Code, section 11910.

Defendants were arraigned and entered pleas of not guilty. They moved to suppress evidence under Penal Code, section 1538.5, and, subsequently, for dismissal of the action under Penal Code, section 995.

All of the defendants had been arrested and charged on the basis of evidence obtained when a number of federal, state and county officers conducted a search of the Rancho Olompali in Marin County, pursuant to a search warrant issued by the Marin County Municipal Court. The search warrant was based upon the affidavit of a member of the Marin County Sheriff's Department averring that a reliable confidential informant had advised him that the residents of the Rancho Olompali were in possession of marijuana, chemical apparatus, precursors, adulterants and restricted dangerous drugs.

At the hearing on defendants' motions to suppress evidence and to dismiss the action, the trial court ruled that the prosecution was required to reveal to the defendants the name of the informant. The prosecution refused

to do so on the ground that the informant's safety might be imperiled, and the trial court then granted the motions for dismissal as to all defendants. This appeal by the People followed.

In order to determine whether the trial court's ruling was correct, we summarize in some detail the events leading to the issuance of the search warrant and the testimony before the grand jury as to the evidence obtained when the search warrant was executed.

The search warrant was issued on January 8, 1969, and executed that evening. The warrant authorized the search of the Rancho Olompali, which was described as consisting of a large two-story house, five smaller single-story buildings, one two-story building, a cement block house and another building which had been used as a deer lodge. The warrant was issued on the basis of the affidavit of Inspector Bock of the Marin County Sheriff's Department. Bock's affidavit averred that at approximately midnight on the night of January 7, 1969, and for the preceding three months, he had received information from a confidential informant whom Bock considered reliable and who had, on two prior occasions, furnished Bock with information resulting in the arrest of various individuals and the seizure of marijuana, restricted dangerous drugs and paraphernalia. Bock averred that he desired to keep the informant's identity secret because his safety would otherwise be imperiled.

With regard to the information supplied concerning the Rancho Olompali, Bock averred that the informant had visited the premises on January 7, 1969, and had personally observed a quantity of marijuana; that on three separate occasions within the past five days he had also seen large quantities of what purported to be LSD. The informant had advised Bock that there were some 40 to 50 adults residing at the ranch and that he had seen virtually all of them using either narcotics or dangerous drugs. He had seen numerous adults furnish marijuana and LSD to small children aged 5 to 14. He had also personally observed narcotics and/or equipment in virtually every building on the premises. The informant further told Bock that the ranch premises were protected by armed guards and an electrical warning system located at the front gate. Bock averred that the informant's background and experience were such that his identification of drugs and narcotics was reliable.

At the hearing on defendants' motions to suppress evidence and to dismiss the action, Bock was called as a witness and testified that all of the information contained in the affidavit in support of the search warrant had been obtained from the informant. The informant had visited the ranch as a guest on several occasions and had first reported his observations to Bock in September or October 1968. On January 6 and 7, 1969, the two days

immediately preceding the issuance of the search warrant, the informant communicated with Bock in considerable detail concerning activities at the ranch. Bock testified that the informant telephoned him on January 6 and stated that he had been to the ranch on quite a few occasions recently and that he had just returned after spending several hours there. The informant further stated that he had seen large quantities of narcotics at various residences on the ranch. He told Bock that he was returning to the ranch that night. On the following day, January 7, the informant telephoned Bock at 4 p.m., and the latter arranged to meet with him at 6 p.m. During the course of the meeting, the informant stated that he had spent most of the day at the ranch. He told Bock that he had been inside most of the residences at the ranch that day and had observed what appeared to be marijuana or powder-type drugs in virtually every building. He had also seen narcotics and dangerous drugs given to small children. The informant gave Bock the names of three of the defendants, stating that McKendrick was in possession of a substance which the informant believed to be LSD, that McCoy was a user of marijuana and that D'Amore was generally in possession of a large amount of marijuana. Bock asked the informant to describe the particular buildings which he had visited, but the informant was unable to do so in sufficient detail. He told Bock that he was returning to the ranch later that day and would telephone Bock when he got back and give him the information he had requested, which information was furnished Bock as promised. At 11 a.m. on January 8, Bock contacted a member of the district attorney's office, and the affidavit in support of the search warrant was then prepared.

The testimony given at the grand jury hearing shows that at 7:45 p.m. on January 8, a search of the Rancho Olompali was conducted pursuant to the warrant. Upon entering a small single-story structure which contained two rooms, the officers encountered defendant Ellison and another man. The two men were in a room which was apparently being used as a workshop. The second room, which served as living quarters, contained a quantity of marijuana and hashish. The room contained numerous personal papers belonging to Ellison. After being warned of his constitutional rights, Ellison volunteered the information that his male companion was a visitor.

In the cement block house, the officers found a packet of what appeared to be heroin, and, directly beneath it, motor vehicle registration in the name of defendant Stenz.

Another building contained marijuana and papers and articles in the name of defendant Kalfas.

In a room upstairs in the barn, marijuana, suspected hashish and suspected dangerous drugs were found. Along with these items were a traffic citation and a driver's license receipt made out to defendant Candelario. A

wallet containing Candelario's identification, along with a quantity of marijuana and a package of white powder, were found in a room in the main ranchhouse.

Another room in the main ranchhouse contained a quantity of marijuana and hundreds of papers and forms with the name of defendant Barton.

In a small residence separate from the main house, marijuana and white powder were found. Personal papers and PG&E bills indicated that defendant D'Amore was the occupant.

In a room in the second largest building on the ranch, two packages of suspected marijuana were found in a dresser drawer. The dresser also contained papers, correspondence and envelopes with the name of defendant Doyle.

Another room in the same building contained marijuana, and various pieces of correspondence bearing defendant Minakov's name.

A coat containing a plastic bag of marijuana was found in the closet of one of the master bedrooms in the main ranchhouse. The room also contained other items of narcotics and narcotics paraphernalia. Defendant McCoy was brought into the room and advised of his constitutional rights. He stated that he would talk to the officer, and he took the marijuana from the coat and said that it was his.

Defendant Korte offered to go to her room in the main house and obtain some envelopes for the officers. The room was found to contain marijuana.

Another bedroom in the main house contained a locked cabinet. One of the officers was informed by Mrs. McKendrick that the room belonged to her husband, defendant Robert McKendrick. The cabinet was found to contain marijuana, barbiturates, amphetamine, hashish and peyote. The cabinet also contained a checkbook in the name of defendant McKendrick. Hashish and cocaine were found in a steel box in a closet of the room.

The trial court, in ruling that the prosecution was required to reveal to the defendants the name of the informant, expressed the view that the informant might be a material witness on the issue of the defendants' guilt and might be able to testify that the various items of contraband found at the ranch did not belong to the various defendants charged with their possession. The court therefore concluded that disclosure of the informant's identity or dismissal of the action was required under the rule espoused in *People* v. *Garcia* (1967) 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366], and *Honore* v. *Superior Court* (1969) 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169].

■ The *Garcia* and *Honore* cases require disclosure of an informant's identity where the defense demonstrates a reasonable possibility that the informant would be a material witness on the issue of guilt and could give evidence which might result in the defendant's exoneration. (*People* v. *Garcia, supra,* at pp. 839-840; *Honore* v. *Superior Court, supra,* at p. 170.) The privilege of nondisclosure of the informant's identity applies where the informant's role is limited to pointing the finger of suspicion at one who has violated the law and the informant has played no part in the criminal act with which the defendant is later charged, and is not a material witness on the issue of guilt. (*People* v. *Lawrence* (1957) 149 Cal.App.2d 435, 450 [308 P.2d 821]; to the same effect, see *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33]; *People* v. *Garcia, supra,* at pp. 835-836.)

■ While a defendant need not prove that the informant could give testimony favorable to him nor show that the informant was a participant in or eyewitness to the crime, the defendant is not entitled to disclosure of the informant's identity upon a mere "speculation" that the informant could produce evidence favorable to the defense. (*People* v. *Martin* (1969) 2 Cal. App.3d 121, 127 [82 Cal.Rptr. 414].)

In *People* v. *Sewell* (1970) 3 Cal.App.3d 1035 [83 Cal.Rptr. 895], the court held that disclosure of the informant's identity had properly been denied where the defendant failed to indicate the theory of the defense and left it for the trial court to speculate as to whether the informant might possess information favorable to the defense. The court stated: "The record in the case at bench discloses no showing on the part of appellant in support of his motion to disclose the identity of the informer which qualifies as anything more than speculation on his part that in some undefined way that disclosure might provide evidence of an unarticulated theory of defense. Appellant did not take the stand. He presented no witnesses in his defense or evidence or declaration in support of his motion. The prosecution evidence discloses no theory on which the testimony of the informer would be helpful to the defense. . . .

"Appellant argues . . . that a defendant in a criminal proceeding has a constitutional right to disclosure of the name of an informer. He appears to contend from this proposition that any requirement that some showing must be made by a defendant in order to entitle him to that disclosure is unconstitutional. We see no constitutional infirmity in the requirement. The process leading to the disclosure of the identity of an informer is one form of discovery in criminal cases. The defendant who elects to pursue that discovery has no constitutional right to refrain from making the showing requisite to it. [Citation.]" (Pp. 1039-1040.)

■ In the instant case, the affidavit in support of the search warrant

and the testimony elicited from Inspector Bock show only that the informant visited the Rancho Olompali on various occasions prior to the search of said premises and observed some 40 to 50 adults possessing and using marijuana and restricted dangerous drugs and paraphernalia. The informant's function, in informing the police of his observations, was limited to pointing the finger of suspicion at those persons residing at the ranch and furnishing the requisite information for the issuance of the search warrant. The informant was not present when the ranch was searched. That search produced ample evidence, both circumstantial and in some cases direct, that the 11 defendants were then in possession of various items of contraband. When the defendants moved for disclosure of the informant's identity, they failed to testify or produce witnesses or declarations articulating the theory of their defense or demonstrating in what manner they would be benefited by the disclosure of the informant's identity. Certainly, the evidence produced by the prosecution at the grand jury hearing discloses no theory upon which the informant's testimony could be deemed helpful to the defense.

Under the circumstances here present, the defendants did not sustain their burden of demonstrating a reasonable possibility that the informant could give evidence which might result in the exoneration of any of them. Disclosure of an informant's identity clearly may not be required for purely speculative reasons, hence the trial court abused its discretion in doing so.

The order dismissing the instant action is reversed, and the cause is remanded for trial.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied December 24, 1970.