Filed 2/18/14  P. v. DaRosa CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070617 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 06F08861, 11F01322) |
| v. | |
| JONATHON MICHAEL DAROSA, | |
| Defendant and Appellant. | |

A jury found defendant Jonathon Michael DaRosa[1] guilty of possessing for sale five different controlled substances, simple possession of a sixth, and being a convicted felon in possession of guns and ammunition.  It also sustained a quantity allegation in connection with one count, as well as five allegations of being personally armed with a

---

[1]  Appearing both ways in the typed record, defendant's signature indicates he capitalizes his surname in this manner.

1

gun. After defendant requested a court trial on the issue, the trial court sustained a recidivist allegation. It then found him in violation of probation for a 2006 burglary conviction (based on the jury's verdicts) and revoked the order of probation. It sentenced him to state prison for a total of almost 18 years for both cases.

Although included in his notice of appeal, defendant does not raise any issues regarding the revocation of his probation in the 2006 case; we therefore deem the appeal in case No. 06F08861 to be abandoned and will dismiss it. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.) Defendant contends the trial court erred in excluding evidence of third party culpability, asks us to review whether the court properly denied his motion for disclosure of confidential informants (in connection with which he seeks to preserve his argument that the procedure for disclosure violates his federal right to due process), and claims he is entitled to resentencing because the court ignored the mitigating factor of his addiction. Defendant also maintains that he is entitled to additional conduct credit, and that there are errors with respect to the sentence for one count in both the minute order and in the abstract of judgment (points that the People properly concede). We shall affirm the judgment in case No. 11F01322 as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant does not challenge the sufficiency of the evidence to support his convictions, nor do we need to assess prejudice from any error. We therefore limit our factual account to an overview of the significant facts.

In early February 2011, defendant was the subject of a traffic stop for excessive acceleration. He said he had just purchased the car (a Pontiac Grand Prix), so the registration was listed under another name. His driver's license indicated an address on Ahrentzen Court in Citrus Heights. At some point, someone added an address on Tangors Way to the computer record of the officer's report on the stop; the officer did not obtain it herself. Defendant's girlfriend (now wife) was in fact the registered owner of

2

the car. She was also the owner of the Tangors Way residence, where she lived with roommates.

Detective Daniel Heffner subsequently drove past the Tangors Way address and saw the car parked in the driveway. (The parties do not direct us to any testimony explaining the manner in which defendant came to the detective's attention.) On February 15, he had defendant under surveillance. The latter was doing something under the hood of the car in the driveway. When a second detective arrived after Heffner summoned him, who detained defendant and a companion, Heffner effected a probation search of the Tangors Way residence; defendant told him the door key was on a ring in the car's ignition. Heffner also retrieved a safe key from defendant's pocket.

Detective Heffner went to the front door, accompanied by other officers. The key fit, but the front door was unlocked. No one else was present. Inside the residence, the officers forced open the locked door to the master bedroom. (They later found that a key on defendant's ring was for the bedroom door.) They found a floor safe in the closet, which had a keyhole in the combination dial. The key from defendant unlocked the dial, but the officers needed to pry open the safe because the combination was unknown. Inside the safe were a large amount of cash in a locked box (which the officers were able to open with yet another key on defendant's ring), two guns, ammunition, and the various controlled substances that were the bases for defendant's possession convictions. Defendant's fingerprints were on two containers. There was also a bail receipt and a passport in defendant's name. The fingerprints of defendant's wife were on one of the two containers, and the fingerprints of a friend of defendant were on the ammunition box (though the friend denied having any access to the safe; he asserted he must have touched it when it was on defendant's desk when the friend was using the computer). A search of defendant's person found a baggie of heroin, which had a picture of an eight ball on it matching baggies found in the master bedroom.

3

Defendant did not testify. The defense rested without calling any witnesses. Defense counsel argued that the roommates of defendant's wife had access to the bedroom and safe and were more likely to have been selling the contraband than defendant (who did not live there), raising a reasonable doubt of defendant's guilt.

## DISCUSSION

### I. The Trial Court Properly Refused to Disclose the Informant's Identity

We reorder defendant's arguments to reflect the order in which they arose in the trial court. Before trial, defendant moved to disclose the identities of the confidential informants who provided facts focusing police attention on him. (Evid. Code, §1042, subd. (d).) (Defendant had also sought disclosure of other confidential informants who provided facts supporting a search warrant executed in May 2011 at the same residence, but does not renew this issue on appeal. We therefore disregard the People's arguments regarding disclosure of these *other* informants.)

The narrative of Detective Heffner attached to defendant's motion reflected the explanation of how he came to focus on defendant: Before beginning his surveillance of defendant, he had "received information" about defendant selling drugs from the Tangors Way residence, and a traffic stop had also identified the car defendant was driving at the time as being registered to that address. The prosecution, in response to an informal defense request for discovery of this information, claimed the source of the former "information" was privileged under Evidence Code section 1041.

At the hearing on defendant's motion to disclose the identities of confidential informants, the prosecution asserted that the source of information was not a percipient witness to the search of defendant's home, and thus there was not a reasonable possibility that the informant could provide exculpatory information. While the court did not think defendant "really . . . made the threshold," it wanted the opportunity to determine the

nature of the information provided before the probation search, so it convened a hearing in camera with Detective Heffner. Following the confidential hearing, the court stated that it was totally satisfied that there was not any possibility that disclosure could result in exculpatory evidence.

The prosecution must disclose the identity of an informant or dismiss the charges only where a defendant satisfies his burden of producing some evidence that there is a reasonable possibility of the informant providing exculpatory evidence. (*People v. Lawley* (2002) 27 Cal.4th 102, 159.) In order to trigger any inquiry in camera on the substance of potential testimony from an informant as a percipient witness, a defendant must make a prima facie showing of this possibility. (*People v. Oppel* (1990) 222 Cal.App.3d 1146, 1152-1153.) A reasonable possibility is established if the informant perceived either the commission or the immediate antecedent circumstances of the charged offenses. (*Davis v. Superior Court* (2010) 186 Cal.App.4th 1272, 1276-1277.) We review the trial court's ruling for an abuse of discretion. (*Id.* at p. 1277, citing (by analogy) *People v. Hobbs* (1994) 7 Cal.4th 948, 976 (*Hobbs*) [applying this standard of review to a motion to unseal search warrant to disclose informant]; but see *People v. Gordon* (1990) 50 Cal.3d 1223, 1245-1246 [antedating *Hobbs*; unsettled whether standard of review is de novo or abuse of discretion].)

At the hearing in camera, the trial court learned that two informants (who were different than the other three informants involved with the May 2011 search warrant) specifically had identified defendant by name as selling contraband, and did not identify any other persons as being involved in the sales. One informant purchased contraband but did not know where defendant lived. The second informant connected defendant with the Tangors Way home to Detective Heffner as they drove by it; Heffner wrote down the license plate of a car in the driveway. A computer search of police records then revealed the officer's report of the traffic stop of defendant in that car a week or so before. When

5

shown defendant's picture, the second informant identified him as the seller. The second informant also provided further inculpatory evidence of defendant's involvement with guns and controlled substances (which we will not detail). Neither of the informants was present at the time of the probation search.

The trial court did not abuse its discretion in denying disclosure. As the trial court stated, the possibility of others *also* transacting in contraband from the location did not exculpate defendant from jointly possessing the contraband with them; he "just may have been one of many who were doing illicit activities at that address, but that's not . . . a defense." (Accord, *People v. Hambarian* (1973) 31 Cal.App.3d 643, 659 (*Hambarian*).) The circumstances leading to the probation search were not in dispute (there being a stipulation that all searches were lawful.) Moreover, neither informant identified anyone else as a dealer from that location. Never having been to the home, the first informant could not possibly provide any exculpatory evidence regarding control. Similarly, all the second informant provided was further evidence of defendant's own control over the contraband, so it is mere speculation that the second informant could provide any facts leading to the possibility of acquittal. In addition, the second informant could not provide any facts relevant to the circumstances of knowledge and control *at the time of the subsequent search*. (*Id*. at p. 661.) The trial court as a result was not unreasonable in making its ruling, and with sufficient evidence at trial of his knowledge and control, defendant was not thereby deprived of a fair trial. (*Id*. at p. 659.)

## II. We Cannot Find the *Hobbs* Procedure Unconstitutional

Defendant renews the argument he made in the trial court that the in camera procedure approved in *Hobbs*, *supra*, 7 Cal.4th at p. 971 for sealed search warrants (which it based on the practice under Evid. Code, § 1042) violated his federal right to due process. Defendant may address his arguments to the Supreme Court; we do not have the authority to find that the *Hobbs*-endorsed procedure violates the federal Constitution.

6

(*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Dunn* (1995) 40 Cal.App.4th 1039, 1050.)

### III. Evidence of Third Party Culpability Was Not Warranted

In a pretrial motion in limine, defendant sought the introduction of evidence adduced in connection with the execution of search warrants at the Tangors Way home in May and September 2011, detailing the illicit transactions of other people (including defendant's wife) who had resided there in February 2011 and involving many of the same clients with whom the prosecution sought to connect him.[2] He contended that this would somehow demonstrate that only these other individuals were involved in the sale of contraband from the residence. The prosecutor pointed out that evidence of joint control *at the time of the February 2011 search* was certainly more probative on the issue than evidence in later searches after defendant was in custody, and "certainly counsel with regards to the February 15th evidence can raise that third-party culpability argument as to one or more of those other people, and we will have to deal with that." The trial court agreed. "But the fact that everybody involved in that house is involved in drugs, frankly, I don't think it has any probative effect [that exculpates defendant], and, in fact, it may be the opposite, that . . . the people who . . . are associated with that house are drug people." It concluded "the probative value of this has almost no weight whatsoever. . . . [¶] So I am going to rule that the May and September searches may not . . . be presented through testimony other than [directly from] those [third party] people" (who would likely decline in any event to testify on self-incrimination grounds).

We do not need to belabor the analysis of this issue. In order to be admissible, evidence of third party culpability must directly or circumstantially connect the third parties with the commission of the charged crimes (as opposed to evidence of mere

---

[2] We do not need to specify the evidence beyond this general categorization.

motive or opportunity), which is concededly present here. (*People v. McWhorter* (2009) 47 Cal.4th 318, 367-368.) However, the evidence must be capable of establishing a reasonable doubt of a defendant's guilt, and be more probative than prejudicial. (*Id*. at p. 368.) As with evidentiary rulings in general, this is a matter for the trial court's discretion, which does not violate a defendant's right to present a defense if the evidence is of marginal probative value. (*People v. Hall* (1986) 41 Cal.3d 826, 834-835; see *People v. Smithey* (1999) 20 Cal.4th 936, 996 [noting exception of due process violation where "highly probative" evidence of innocence excluded]; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103 [due process not violated unless defense *completely* excluded; exclusion of only "some evidence" at worst an "error of law"].)

As the trial court correctly concluded, the strongest evidence of third party guilt would be the indicia of control present at the time of defendant's arrest in February. Even the February third party evidence itself does not *foreclose* defendant's guilt (*Hambarian*, *supra*, 31 Cal.App.3d at pp. 659, 661), though it allowed him to make an argument to that effect. As a result, the evidence connected with subsequent searches is at best cumulative and corroborative, with only a minor subsidiary probative value that does not warrant any time consumed in presenting it. Defendant's description of it as "dynamite evidence" does not make it so. We therefore do not find that the trial court abused its discretion, or that excluding the evidence had the result of violating defendant's right to due process.

## IV. The Trial Court Gave Consideration to Defendant's Addiction in Sentencing

Defendant contends that in sentencing him, the trial court did not consider the mitigating circumstance of his drug addiction. He claims he is therefore entitled to a remand for resentencing to allow the trial court to include this factor in the balance. (See

8

*In re Spears* (1984) 157 Cal.App.3d 1203, 1213; *People v. Simpson* (1979) 90 Cal.App.3d 919, 927.)

As defendant concedes, the issue of his addiction was included in his statement in mitigation, and the trial court expressly discussed feeling sympathetic to defendant on that basis. However, the court also stated that it found this did not excuse the degree to which defendant pursued his criminal enterprise (including an angry threat to cut off one customer who had bought from someone else); "some folks are just plain in it for the money and don't really think about the misery that they are spreading." It did not refer again to this factor in the course of its lengthy explanation (for the benefit of defendant's family) of the lengthy sentence it was imposing.

As we emphasized in *People v. Reyes* (1987) 195 Cal.App.3d 957, 960-961, addiction is not of itself a mitigating factor. If a defendant "shows little or no motivation to change his life style," and it only provides an incentive to commit crime, the addiction does not significantly reduce his culpability and is properly disregarded in sentencing. (*Id.* at pp. 963-964.) This is exactly what the present trial court concluded. Although defendant had failed one effort at rehabilitation, he was not simply struggling in the throes of addiction; rather, he was putting his efforts into his criminal enterprise. The trial court consequently was correct in failing to give his addiction any further consideration in imposing sentence based on numerous factors in aggravation.

### V. Defendant Is Entitled to 14 Additional Days of Conduct Credits

At sentencing, the trial court (relying on figures that its court clerk provided) gave defendant credit for 368 days of custody, but only 170 days of conduct credits, for a total of 538 days of presentence custody. (The probation report, filed 30 days before sentencing, calculated only the then total of 338 days of actual custody and indicated defendant was entitled to conduct credits at the rate of two for four.)

9

Defendant maintains, and the People properly concede, that the court clerk's calculation of conduct credits was erroneous. As there were 92 four-day periods of actual custody, defendant was entitled to 184 days of conduct credit, for a total of 552 days of presentence custody. We will modify the judgment and direct the trial court to issue an amended abstract of judgment reflecting the change.

## VI. The Minute Order and Abstract Do Not Correctly Reflect the Sentence

The trial court, in its oral rendition of judgment, imposed a 16-month consecutive term for count four (former Health & Saf. Code, § 11378), reflecting a doubling of one-third of the middle term for the offense. Taking a page from the game of bridge, the court clerk redoubled this figure in the minutes and the abstract, listing a 32-month term for count four.

As defendant maintains, and the People properly concede, the oral pronouncement is the actual rendition of judgment, and neither the minutes nor the abstract can deviate substantively from it. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Zachery* (2007) 147 Cal.App.4th 380, 387-388.) The minutes and the abstract should reflect a 16-month consecutive term for count four, not two years eight months. We will direct the trial court to make these changes as well.

**DISPOSITION**

The appeal in case No. 06F08861 is dismissed.  The judgment in case No. 11F01322 is modified to award defendant 184 days of conduct credit, for a total of 552 days of presentence custody.  As thus modified, the judgment is affirmed.  The trial court shall prepare an amended minute order and an amended abstract of judgment reflecting both this change and a 16-month consecutive sentence for count four, and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.


                                           BUTZ          , J.


We concur:


      BLEASE       , Acting P. J.


      MURRAY       , J.